## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **COLLETTE DENISE TALTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Case No. CIV-21-316-RAW-GLJ** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Claimant Collette Denise Talton requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was fifty-three years old at the time of the most recent administrative hearing (Tr. 307, 2411). She completed four or more years of college and has previously worked as an internal auditor, nursing assistant, and residential rehabilitation aide (Tr. 377, 2375). Claimant alleges she has been unable to work since May 25, 2007, continuing through her date last insured of June 30, 2010. She alleges disability due to Gulf War syndrome, diabetes, arthritis, depression, and migraine headaches. (Tr. 370).

## Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 9, 2008. Her application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated August 9, 2010. (Tr. 141-148). The Appeals Council vacated the ALJ's decision on March 15, 2012 and remanded to the ALJ for further evaluation. (Tr. 155-156). On remand, the ALJ Belcher held a second administrative hearing and again determined Claimant was not disabled in a written decision dated January 17, 2014. (Tr. 10-21). The Appeals Council then denied review (Tr. 2467-2470), but this Court reversed and remanded in Case No. CIV-17-252-JHP-KEW on September 28, 2018 (Tr. 2476-2490). Following this Court's remand Order, the Appeals Council vacated the ALJ's August 2018 decision and remanded for consideration by a different ALJ. (Tr. 2491-2493). On remand, ALJ Luke Liter held two additional administrative

hearings (Tr. 2388-2442) and determined that Claimant was not disabled in a written decision dated March 25, 2020. (Tr. 2362-2377). The Appeals Council again denied review (Tr. 2345-2348), so ALJ Liter's March 2020 decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## The ALJ's Decision

The ALJ made his decision at step five of the sequential evaluation. At step two, he found Claimant had the severe impairments of diabetes mellitus, insomnia, obesity, major depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD"), as well as the nonsevere impairment of alcohol dependence. (Tr. 2364-2365). At step three, he determined that Claimant did not meet a Listing. At step four, he found that, through her date last insured, Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), *i.e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour day and stand/walk for six hours in an eight-hour day, except she could only occasionally climb ramps/stairs, balance, kneel, stoop, crouch, and crawl; but she could never climb ladders/ropes/scaffolds and should avoid concentrated exposure to fumes, odors, dusts, gases, and other similar respiratory irritants. Additionally, he found that she could understand, remember, and carry out simple and detailed tasks but not complex tasks; she could tolerate standard supervision as well as occasional public contact; and she could not have a job requiring a forced pace or an assembly line type of pace. (Tr. 2368). The ALJ thus concluded that although Claimant could not return to her past relevant work, she was

nevertheless not disabled because there was work she could perform, *e. g.*, collator operator, routing clerk, and photo copying machine operator. (Tr. 2375-2377).

## Review

Claimant contends[2] that the ALJ erred by (i) violating her due process rights by limiting her testimony to evidence from 2007 through 2010 and not accounting for her habits and patterns that existed prior to the disability application date, and (ii) failed to properly account for her RFC. As to the second contention, she argues the ALJ failed to properly account for her subjective statements as to her mental impairments and further failed to account for her VA disability rating. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The relevant medical evidence in this case reflects that Claimant is a veteran who served in the Gulf War but did not see combat. In 2009, she was awarded a service-connected disability total of 20%, for fatigue (10%) and insomnia (10%). (Tr. 334-343, 1818). Most of Claimant's treatment records are through the VA. Records from 2007 indicate that in October she requested psychiatric care through the VA but denied major mood symptoms or suicidal thoughts. (Tr. 532). Her active problem list included prolonged PTSD, migraine syndrome, hypertension, morbid obesity, anxiety, psychotic disorder, diabetes, sleep apnea, and depression. (Tr. 751). From May 27 through June 4,

---

[2] The Plaintiff has failed to comply with this Court's Loc. Civ. R. 7.1(c) & (e) regarding format and length of both her Opening Brief and her Reply Brief. The Court will proceed with the arguments raised in this case, but cautions counsel that, in the future, consideration may only be given to that portion of the brief in compliance with this Court's Local Rules.

she was hospitalized for syncope. (Tr. 1072-1180, 1541-1543, 1574-1577). Shortly thereafter, Claimant's diabetes was uncontrolled because she had not understood her medication and insulin instructions. (Tr. 1055). In November 2007 she was hospitalized for pneumonia and asthma exacerbation. (Tr. 1024).

In 2008, Claimant reported that she was largely doing well, with some anxiety and occasional down feelings as well as occasional sleep problems. (Tr. 591). In September, the claimant reported "talking out of her head" after several days of trouble sleeping, but medication eventually helped her sleep and she returned to thinking clearly. (Tr. 862). On October 3, 2008, Claimant had a mental health treatment plan review, and her diagnoses included anxiety, depression, and insomnia. (Tr. 852). On October 21, 2008, Claimant underwent a compensation and pension examination. (Tr. 731-746). At this exam, she reported sleeping six to eight hours per night with medication and two to five hours without. (Tr. 736). She reported one to two panic attacks per year, but fewer with medication. (Tr. 736). She met the criteria for a diagnosis of primary insomnia, as well as a subjective history of fatigue. (Tr. 738-743). She had no rash or lesions at the time of examination. (Tr. 746). She then had a mental health evaluation on October 29, 2008, at which time she was assessed with anxiety NOS with somatic features, insomnia with a rule/out of primary vs. related to a mood disorder, and depression NOS with history of AH rule/out psychosis. (Tr. 815). On December 3, 2008, Claimant reported an episode of trouble sleeping in a hotel room, during which time she took off her clothes, yelled, and was spitting, and informed the provider that she had experienced a similar episode earlier in the year at home. (Tr. 796).

In 2009, Claimant was actively working to qualify for bariatric surgery. (Tr. 786, 1231, 1385, 1711). She was hospitalized November 3 through November 5 after she presented to the ER with complaints of sharp pain in her chest. Her discharge diagnoses were: anxiety-depression, obstructive sleep apnea, morbid obesity, dyslipidemia, chest pain (noncardiac), and uncontrolled diabetes. (Tr. 1270-1298). On November 30, a psychotherapy note indicates Claimant was suffering from marked anxiety and somatic concerns. (Tr. 1392). On December 2, she reported at a primary care appointment she was doing "a lot better." (Tr. 1384).

A March 2010 mental health note reiterated claimant's diagnoses of anxiety, depression, and insomnia. (Tr. 1711). At an evaluation before bariatric surgery, Claimant's chest pains were assessed as atypical, nonexertional, and more related to emotions. (Tr. 2022).

On November 10, 2008, Dr. Joel Justin Hopper completed a history and physical consultative examination of Claimant. (Tr. 666-673). He assessed her with morbid obesity, hypetension, diabetes mellitus – insulin dependent, osteoarthritis, asthma, tobacco abuse history, fibroid uterus, and gait abnormality secondary to leg length discrepancy. (Tr. 667). He noted she ambulated with an unstable gait without the use of an assistive device, but that her gait became stable with a cane. (Tr. 667).

On November 18, 2008, Dr. Dennis Rawlings, Ph.D., completed a mental status examination of Claimant. (Tr. 674-678). He noted her reports of poor sleep, but found her intelligence as above average, and that her insight, impulse control, and judgment were generally intact. (Tr. 677). He assessed her with major depressive disorder, recurrent,

severe, without psychotic features, improved with treatment; anxiety disorder NOS; dysthymic disorder; and PTSD, mild to moderate. (Tr. 678). He found she had a good to fair prognosis with treatment, and recommended continuing current treatment, and abstaining from alcohol and drugs for life, as well as obtaining counseling for abuse. (Tr. 678).

Treatment notes prior to claimant's alleged onset date of May 25, 2007 indicate a report of uncontrolled diabetes in August 2005. (Tr. 577). On April 9, 2004, Claimant was assessed for sleep disorder and/or fatigue secondary to military service, and a physician opined that her insomnia and fatigue produced a "moderate degree of dysfunction in her social activities and work capacity." (Tr. 1456-1469). During this time, Claimant also told providers she believed a counselor had recorded her seven years earlier during a counseling session because co-workers were talking about her. (Tr. 1472). On July 8, 2005, Dr. Fatema Haque completed a "Psychosocial Assessment" that included her history and self reports, but no diagnoses or further assessment. (Tr. 649-642). The day before, she had reported doing a little better and sleeping better. (Tr. 657). In 2006, the claimant reported she was stable on her meds but if she ran out or did not take them she became irritable, depressed, and experienced racing thoughts. (Tr. 599). In February 2007, she reported more anxiety and sleep problems, but that she forgot she was on a medication and agreed to restart it. (Tr. 595).

Even older evidence shows in 1994 Claimant reported sexual harassment from men in her unit while they were in Saudi Arabia. (Tr. 1444). She was diagnosed with depression during this time and also reported sleeping difficulties. (Tr. 1731-1740). She reported

beliefs that others were talking about her as far back as 1996 and 1997. (Tr. 1747, 1757). Record also contains a letter from Dr. Dustan Buckely dated August 20, 1999, stating her worst symptoms included insomnia, fatigue, and diarrhea, and that he believed they were likely as not to have begun while she was serving in the Gulf War. (Tr. 1433).

State reviewing physicians determined initially that she could perform light work, but only occasionally perform all postural limitations. (Tr. 523-529). As to her mental impairments, state reviewing physicians determined initially and upon reconsideration that she did not have a severe mental impairment, noting she had mild limitations in the three areas of functional limitation and no episodes of decompensation. (Tr. 508-520, 540-552). However, the physician on reconsideration wrote in 2008 that Claimant's situation had worsened in light of her reports of staying in bed a lot, insomnia, and pain due to episodic sickness. (Tr. 552). Following Dr. Rawlings's mental status exam, Dr. Sharon Taber, Ph.D. again reviewed the record and determined Claimant did not have a severe mental impairment, including no restrictions of activities of daily living and difficulties in maintaining social functioning, and only mild difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. (Tr. 687-700).

At a May 25, 2010 administrative hearing, Claimant appeared with a cane. (Tr. 54-56). She testified that her asthma had existed since around 2002, including a couple trips to the ER following asthma attacks. (Tr. 57-58). Additionally, she testified that she has migraine headaches almost daily, which made her nauseated and need to lie down in a dark room about four times per week. (Tr. 59). She added that she had difficulty getting up three times a week due to headaches. (Tr. 59). Claimant testified that her diabetes was not

well controlled. (Tr. 61-62). She further reported that her medications caused insomnia and feeling like a "zombie" and that she got less than three to five hours of sleep per night. (Tr. 63). She believed she had Gulf War Syndrome, although she had not been diagnosed with it, reporting rashes, vomiting, and diarrhea. (Tr. 64-66). As to chronic fatigue, she testified she is tired all the time, has body aches and myalgias all over, and that her PTSD caused nightmares. (Tr. 66-67). She reported seeing a counselor once every three months but that she would prefer more frequent visits. (Tr. 69). As to her work history, she testified that she went from full-time to part-time work before she stopped working altogether, noting that she lost jobs because she was missing work and was sick. (Tr. 70). Additionally, she reported suspicions that her counseling sessions were being recorded and that she trusted her own instincts over others. (Tr. 73).

At a January 9, 2013 hearing, Claimant testified she believed her main problems were chronic fatigue and insomnia, noting she had been granted a 20% disability rating by the VA. (Tr. 101). She testified she had been prescribed a C-PAP machine through the VA and usually used it although she needed a replacement part at the time of the hearing, and that she slept about two to four hours per night. (Tr. 102-104). Claimant also discussed the fact that she believed people were talking about her whenever she went somewhere, and reported having to attend anger management sometime in the early 2000s following an incident where she was physically aggressive with a co-worker who filed a protective order against her. (Tr. 105-106). She reported being on medication since 2002 or 2004 and that she would experience aggression if off her medications, and that she still had some emotional outbursts while on it. (Tr. 107-108). Additionally, she stated she was suspicious

of people and believed people were reporting on her and following her, which made working difficult because she was paranoid and very vigilant. (Tr. 112-113). She reported she was no longer receiving counseling through the VA because she could not afford going outside the VA but she had been "betrayed" by three different VA counselors who gave her information to people they should not have shared it with. (Tr. 117).

Claimant's most recent administrative hearing occurred on February 27, 2020. At that time, ALJ Liter stated he was concentrating on the time between the alleged onset date of May 26, 2007 and the date last insured of June 30, 2010. (Tr. 2414). He called Dr. Daniel Hamill as a medical expert, who testified that Claimant's medically determinable severe mental impairments were PTSD, consistent with her anxiety diagnosis, as well as major depressive disorder, but he did not credit a diagnosis related to alcohol abuse. (Tr. 2415). He opined she should not do complex tasks but could handle details, have only occasional contact with the general public, and should avoid assembly line/forced pace work. (Tr. 2416). He opined that occasional contact with co-workers could be added out of an abundance of caution in light of Claimant's history of abuse in the military. (Tr. 2417). When Claimant's representative attempted to question Dr. Hamill about records from the 1990s, ALJ Liter stated that her psychological condition in 1994 was not relevant to the period beginning May 2007. (Tr. 2424). When the representative pointed out claimant's episode in the hotel, he responded that its significance would be related to how many she had and how close they were together. (Tr. 2428-2429).

In his written opinion at step four, the ALJ summarized Claimant's administrative hearing testimony, and referred again to the objective evidence and opinions in the record,

including Dr. Hamill's, before finding that the claimant could perform light work with the above-mentioned additional limitations (Tr. 2368-2375). As relevant to this appeal, the ALJ found that the evidence in the record was consistent with the assigned physical and mental limitations. As to her mental limitations, he stated that, in light of the evidence and global assessment of functioning scores in the record around 60, that her symptoms appeared similar and stable and she could do the work as discussed in the RFC. (Tr. 2373-2374). As to her physical impairments, he noted her obesity but that she was actively involved in a weight loss program and had an active lifestyle just two months after the date last insured, finding she could therefore perform light work with the postural and environmental restrictions assigned. (Tr. 2374). He assigned great weight to Dr. Hamill's opinion, noting he examined the entire record and that his testimony was based on a "thorough study." (Tr. 2375). He gave no weight to the state reviewing physician opinions as to her mental impairments because the evidence clearly supported the presence of severe mental impairments. (Tr. 2375). He concurred with the state physicians who found she could perform an eroded range of light work but gave little weight to any opinion she could perform medium work. (Tr. 2375). He gave no weight to the VA disability rating, noting the systems were distinct and different, where the VA credits a percentage of disability while the Social Security Administration required a finding that someone was fully disabled and unable to work. (Tr. 2375). He thus concluded there was work Claimant could perform and that she was therefore not disabled during the relevant time period. (Tr. 2376-2377).

**Due Process**.  The claimant first contends the ALJ violated her due process right to be heard by limiting her testimony to the time between her alleged onset date and her date last insured.  She contends that evidence regarding her employment prior to the alleged onset date, as well as her VA disability rating, support this, asserting that her illnesses prevented her from maintaining employment.  She complains that the ALJ determined testimony outside the closed disability period was not relevant.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted).  Specifically, "[d]ue process for social security applicants requires that claimant be given notice and an opportunity to be heard." *Bush v. Apfel*, 34 F. Supp. 2d 1290, 1298 (N.D. Okla. 1999); *see also Hinck v. Colvin*, 90 F. Supp. 3d 1217, 1220 (D. Kan. 2015) ("While disability benefits are not a constitutional right, and their provision is a creature of statute, the 'right' to Social Security benefits is in one sense 'earned.'  And, '[n]o person shall be . . . deprived of life, liberty, or property, without due process of law.") (quoting *Flemming v. Nestor,* 363 U.S. 603, 610 (1960) and U.S. Const., amend. V.).

However, "apart from core due-process violations such as the failure to give notice or any opportunity to be heard, when (as here) a party complains about the *course* of administrative proceedings, that party must demonstrate that the adjudication was infected by some prejudicial, fundamentally unfair element." *Energy W. Mining Co v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009) (quotation omitted).  "Similarly, the conduct of the hearing rests generally in the examiner's discretion." *Roybal v. Soc. Sec. Admin.*, 2014 WL

12786917, at *6 (D.N.M. Oct. 1, 2014), *report and recommendation adopted*, 2014 WL 6983247 (D.N.M. Nov. 30, 2014). In other words, "[a] due process claim will not succeed . . . if the claimant fails to show prejudice." *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014). Claimant contends that evidence of her poor employment history is relevant to the time at issue in this case. However, the ALJ had access to Claimant's employment record, medical records, and VA findings in the voluminous record, and Claimant further testified at two earlier hearings that were much closer in time to the dates at issue in this case. Claimant has failed to show a likelihood of a different result had she been permitted to provide lengthier testimony ranging outside the disability period. Under the circumstances of this case, the undersigned Magistrate Judge cannot say that Claimant was deprived of due process.

**VA Disability Rating**. Claimant next asserts that the ALJ erred in his analysis with regard to the VA's disability rating. An ALJ is not required to give controlling weight to the disability ratings by the VA, *see* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he is required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. § 404.1527. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive.") (citing *Baca v. Dept. of Health and Human*

-14-

*Services*, 5 F.3d 476, 480 (1993)). In this case, the ALJ considered the VA's disability rating but gave it no weight, noting that the systems were different. He continued, noting that the VA provided a percentage of disability while the Social Security Administration only considered disability "in terms of fully disabled and unable to do any work at all." (Tr. 2375). Particularly given that Claimant's VA rating was only 20% during the relevant time period, "[Claimant] proffers nothing to suggest that this rationale was not adequate or that the failure to more specifically compare and contrast the Commissioner's rules to those that informed the VA's decision might yield a different result." *Rex v. Colvin*, 26 F. Supp. 3d 1058, 1066 (D. Colo. 2014); *see also Breneiser v. Astrue*, 231 Fed. Appx. 840, 845 (10th Cir. 2007) ("There is no dispute that the ALJ considered the VA records and acknowledged the VA's 100% disability rating. . . . Mr. Breneiser argues that the ALJ should have given the VA's rating more weight, but . . . [t]he ALJ was not required to adopt the VA's conclusion."); *Jones v. Barnhart*, 53 Fed. Appx. 45, 47 (10th Cir. 2002) ("Simply put, the . . . [VA] proceedings are entirely different and separate from a claim under the Social Security Act, with different parties, different evidentiary standards, and different bodies of law governing their outcomes. While disability determinations by other agencies should be considered, they are not binding on the Commissioner.") (internal citations omitted).

**Subjective Statements**. Turning to the ALJ's assessment of the claimant's subjective statements at step four, the undersigned Magistrate Judge recognizes that the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

Claimant contends that her ability to perform minimal household activities did not make her capable of sustained work, and that the ALJ failed to account for her delusions and GAF scores in evaluating the consistency of her subjective statements. But as outlined above, the undersigned Magistrate Judge finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged at step four, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. He even further limited her RFC from that recommended by the state reviewing physicians based on her documented limitations related to her mental impairments. In particular, the ALJ cited to the evidence of record, including the GAF scores, but found that her symptoms were similar and stable through—and even past—her date last insured. Here, there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole at step four. His evaluation is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The ALJ carefully assessed the lengthy medical record in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. *See Hill v.*

*Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (internal citations omitted). The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 30th day of June, 2023.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**